# EXHIBIT H

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 1 of 20

S/N  14/531,641

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Michael D. Harold | Examiner: | Sanh D. PHU |
| Serial No.: | 14/531,641 | Group Art Unit: | 2647 |
| Filed: | November 3, 2014 | Docket No.: | Harold - 102 |
| Title: | SYSTEM, METHOD AND APPARATUS FOR USING A WIRELESS DEVICE TO CONTROL OTHER DEVICES | | |

## DECLARATION OF MICHAEL D. HAROLD UNDER 37 C.F.R. § 1.132

I, Michael D. Harold, hereby declare and say that:

1.      I believe that I am the first, original and sole inventor of the subject matter described and claimed in the above-captioned patent application.  I also believe that I am the first, original and sole inventor of the subject matter described and claimed in U.S. Patent Nos. 8,135,342 and 8,879,987 (the "'342 and '987 patents"), both of which I understand are related to the above-captioned patent application. I have reviewed and understand both the '342 and '987 patents.

2.      I have a BA in Sociology from Louisiana State University.  During and after college, I took several college courses in computer science, programming, statistics and quantitative methods.  I also have taken multiple technical courses in the areas of computer programming, systems architecture, network administration and server administration, paid for by my employers.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 2 of 20

    3.    As an urban planner, I developed mainframe travel demand forecasting software in Fortran used in support of federal and state transportation programs. I developed computer education curricula and taught data processing for five years in a post-secondary technical college. I worked as a programmer/analyst supporting all clinical applications (i.e., Laboratory, Microbiology, Radiology, Surgery, etc.) in a multiple facility hospital system. While a Senior Technical Advisor working in FedEx Global Logistics, I designed and helped manage the development of one of the first global Enterprise Application Integration (EAI) platforms. As a CTO and systems architect for several companies, I have both designed and managed the development of applications and service platforms in the following computing sectors: Last-mile Computing, Cloud Computing and Enterprise Information Archiving (EIA).

    4.    I believe that I am the sole, original and first inventor of the subject matter disclosed and claimed in US Patent No. 8,620,207 (the "'207 patent"). The title of the '207 patent is "System, Method and Apparatus For Distributed Content Dissemination."

    5.    I understand that the last Office Action for this application references US Patent Publication No. 2003/0069921 ("Lamming"), US Patent No. 7,911,493 ("Sarma") and US Patent No. 7,962,854 ("Vance"). I have read and understood the Lamming, Sarma and Vance references.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 3 of 20

6.     Attached hereto as Exhibit A is list of claims 41-56 that I understand will replace the claims currently pending in this application. I believe that I am the original, first and sole inventor of the invention of new claims 41-56.

7.     I also believe that new claims 41-56 are clearly supported by the originally filed disclosure for this application. A supporting analysis follows. For ease of reference, I make citations to the grand-parent '542 patent.

a.     Exemplary support for the new claims is found, for example, in the summary of the invention ("SOTI") in which the following statements are made:

1)     The "present invention involves" a "method" that "permits the use of a wireless cell phone" as "a connection, communications and control device able to connect" a "full size desktop monitor or other digital display device" to the "wireless cell phone." SOTI, ¶1.

2)     The phone "is used to create an Internet or other network connection capable of accessing any browser-based web site" that is "commonly accessible to a standard desktop computer having an Internet connection." SOTI, ¶1.

3)     Examples of what can be downloaded from "any browser-based web sites" include, for example, "digital movies" and "streaming video." SOTI, ¶1.

4)     The "user may access" the movies and videos "using the desktop monitor" (SOTI, ¶1) because, for example, the "user interfaces" of the web

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 4 of 20

site providing this content "can be displayed through" the "desktop monitor." SOTI,
¶8. Those "user interfaces" are sent to the "desktop monitor" by means of the
"wireless cell phone." SOTI, ¶1.

      5)    It is "a further object of the present invention to provide"
a "method" whereby a "cell phone" can "simultaneously" provide "network access" to
"movies" and "video" while also being "used as a handheld controller device to select
and play" the "movie" or "video." SOTI, ¶11.

      6)    The specification of this application draws a distinction
between consumer electronic entertainment applications of my invention and
applications that are not related to that subject matter. For example, col. 12, line
61 – col. 13, line 4 of the '542 patent state that an example of a consumer electronic
entertainment application is a movie that is located remotely on an internet-
accessible server. On the other hand, this same section of the '542 patent
recognizes that non-entertainment embodiments relate to, for example, remotely
accessing a document, spreadsheet or software application. Significantly, all of the
new claims attached as Exhibit A are specifically limited to the consumer electronic
entertainment applications and embodiments of my invention.

      b.    Figure 3A of this application shows an exemplary cell phone 400
that can be used in connection with the "method" described above in paragraphs
7(a)(1-4) of this declaration. A brief summary of how cell phone 400 works in
accordance with the above-described information follows.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 5 of 20

1)      Cell phone 400 can be used to, for example, download a movie or video stored on the remote server (formed by media applications 111 and media 112) so that it can be shown on the high-resolution digital display device 522. Display 522 typically forms a part of a viewer's media center environment that can be at the viewer's home. This display is not an accessory to the cell phone – rather, it is, for example, a TV suitable for use in a movie room in a person's home.

2)      To download a movie or video from the remote server, the viewer first obtains a first graphic user interface ("GUI") associated with the website hosted on the remote server from which movies or videos can be downloaded. For example, the first GUI is provided to the cell phone 400 via an internet connection between the cell phone 400 and the remote server. When the user reads or otherwise interacts with the first GUI as it is shown on the display 522, the viewer is informed about what movies or videos are available for download from the remote server for consumer electronic entertainment purposes.

3)      After the viewer of the display 522 has reviewed the first GUI and selected a movie or video, the viewer interacts with the cell phone 400 to enter entertainment selections commands into the cell phone 400. These commands are based on the visual feedback the viewer obtained by reading or otherwise interacting with the first GUI. The server processes the download commands, sends the requested movie or video from the remote server, to the cell phone 400, and then to the display 522 for viewing by the viewer on the display 522. One main

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 6 of 20

advantage of the present invention is that, for example, the viewer can select, download, control and experience a downloaded movie or video on the large media center display 522 as opposed to the small display screen associated with the cell phone 400.

4)      The cell phone 400 can be connected to the display 522 in a number of different ways.  For example, Figure 3A shows a Wi-Fi chip 486 that allows the phone 400 to communication with the display device over, for example, wireless connections between the phone 400 and the hub 105 and the display 522. The Wi-Fi 33 chip can operate in accordance with the 802.11 standards.

5)      All embodiments of the present invention allow the cell phone 400 to be located a distance away from the display 522 at which a viewer may wish to watch a movie at home (*e.g.* 10-15 feet) while still providing a high quality viewing experience.  Bluetooth technology in existence as of the filing date of my application was not capable of this.  The Wi-Fi links discussed above are exemplary support for the "wherein" clause of the new claim 41 that describes the electrical coupling between the claimed wireless communication device and the display device.

8.      Each one of the features of new independent claim 41 is labelled in Exhibit A with (a) – (f).  A brief discussion of how each claim element is supported by the originally filed disclosure in this application follows.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 7 of 20

a) Exemplary support for feature "a" of new claim 41 which recites a step of electronically coupling a display device with a mobile communications device is discussed above in, for example, paragraphs 7(a)(1-2 and 4-5) and 7(b)(1) of this declaration.

b) Exemplary support for feature "b" of new claim 41 which recites a step of causing a first GUI to be shown on the display is discussed above in, for example, paragraphs 7(a)(4-6) and 7(b)(2) of this declaration.

c) Exemplary support for feature "c" of new claim 41 which recites a step of entering entertainment selection commands into the mobile communication device is discussed above in, for example, paragraphs 7(a)(1 and 4-5) and 7(b)(3) of this declaration.

d) Exemplary support for feature "d" of new claim 41 which recites a step of receiving by the mobile communications device of the particular movie or video is discussed above in, for example, paragraphs 7(a)(1-5) and 7(b)(3 and 5) of this declaration.

e) Exemplary support for feature "e" of new claim 41 which recites a step of transmitting by the mobile communications device of the particular movie or video is discussed above in, for example, paragraphs 7(a)(3-6) and 7(b)(1, 3 and 5) of this declaration.

f) Exemplary support for feature "f" of new claim 41 which further describes the electrical coupling between the mobile communications device and the

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 8 of 20

display device is discussed above in, for example, paragraph 7(b)(5) of this declaration.

9. I also believe that new claims 41-55 are patentable over the Lamming reference for several different reasons.

 a. First, each new claim recites a step by which a display device suitable for use in a media center environment is electrically coupled with a mobile computing device that does not form a part of the media center environment. Most importantly, the electrical coupling is done for consumer electronic entertainment purposes as discussed, for example, at col. 12, line 60 -- col 13, line 4 of the '542 patent.

 Lamming does not teach this claim feature for a number of reasons. The words "consumer" and "entertainment" are not used at all in Lamming. Moreover, I understand that the reference to "Xerox Corporation" on the cover page of Lamming indicates that Lamming is owned by Xerox, which is a company not in the consumer electronic entertainment business. For this reason alone, I believe that the new claims are patentable over Lamming.

 b. Second, each new claim requires a step of causing a first GUI to be shown on the display device that conveys information to a viewer about movies or videos that are individually downloadable from a remote server for display on the display device, again for consumer electronic entertainment purposes. This reads on, for example, the user interfaces mentioned in paragraph 8 of the SOTI.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page **9** of **20**

Lamming does not disclose, teach or suggest this claim element at least for the reason that, as discussed above, I believe that Lamming has nothing to do with consumer electronic entertainment. Moreover, while Figures 4-9 and 18-19 of Lamming show various user interfaces, none of them are shown on an output device like the display 206 shown in Figure 2. There is no disclosure of any modification to Lamming that would allow the user interfaces to be shown on the display 206. As such, Lamming affirmatively does not disclose, teach or suggest the claim element listed above which requires that a consumer electronic entertainment related GUI to be shown on the large display device that is suitable for use in a media center environment. By doing this, the user can select a movie or video for downloading by visual feedback from the large display screen. Lamming has no such capability. For these additional reasons, I believe that each new claim should be found to be patentable over Lamming.

1) Paragraph 3 of Lamming does mention the word "video." However, that word is used in paragraph 3 to describe the contents of a particular *document* that arguably may be accessible by Lamming's document management system. Any videos referenced in Lamming are not individually accessible nor downloadable, as would be the case with a movie/video downloading website. Nor are any such videos used for electronic entertainment for consumers – note the distinction drawn in the specification at col. 12, line 61 – col. 13, line 4 of the '542 patent between "entertainment" (*i.e..*, movies) and non-entertainment

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 10 of 20

related things like accessing "documents." I believe, therefore, that paragraph 3
does not provide a legitimate basis to say that Lamming teaches a movie or video
downloading system consistent with my invention of the new claims.

         2)    Figure 13 of Lamming shows a device functionality
1314 that is described in paragraph 112 of Lamming as possibly being a video
camera. However, Figure 13 specifically shows that "the document server 108, the
document services 116, the file service 118 and the device functionality" such as a
video camera 1314 "are integrally coupled together in an input device 1302."
Paragraph 113 of Lamming states that the video camera 1314 "makes the document
server aware of recorded image data." However, there is no disclosure contained in
Figure 13 or in Lamming that the device functionality 1314 allows videos taken by
the camera to be downloadable to a user of the phone 110 either as a part of a
document or by themselves. Consistent with this is the fact that none of the graphic
user interfaces shown in Lamming provide any movie or video accessing
functionality. Moreover, as discussed above, Lamming's system is not consumer
electronic entertainment related as required by my invention of the new claims.

         So, any videos taken by the camera integral with
the server are not for consumer electronic purposes, assuming for the sake of
argument that they are taken at all. As such, I believe that portions of Lamming do
not provide a legitimate basis to say that Lamming teaches a movies or video
downloading system consistent with my invention of the new claims.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 11 of 20

        c.     Third, each new claim requires a step of entering entertainment selection commands into the mobile communications device to select a movie or video based on the visual feedback a user receives by reading or interacting with the first GUI on the display device. Lamming does not teach this claim element for several reasons. First, as discussed above, it does not contain any disclosure of movies that are individually accessible and downloadable. Second, Lamming only utilizes a small display screen of a phone to select a document which, therefore, makes it impossible for it to disclose downloading of documents based on visual feedback obtained from a viewer reading or otherwise interacting with a GUI shown on a large display screen. Indeed, Lamming explicitly discourages the solution pursued in my invention, characterizing the "small display (or user interface" of the "mobile computing device" as "not a disadvantage" in spite of the fact that it "limits the extent to which documents may be viewed." Lamming at ¶8. Lamming would not have motivated the skilled artisan to pursue the solution of my invention, which "disengages wireless cell phone and other communications device users from the ergonomic constraints of small, low-resolution displays." ['542 patent, col. 2 ll. 19-21]. Lamming encouraged complacency regarding the very limitations that my invention regards as problematic. For this additional reason, the new claims are patentable over Lamming.

        d.     Each new claim recites a step of receiving by the mobile communications device of the movie or video a viewer selected based on the visual

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 12 of 20

feedback obtained by reading or interacting with the first GUI shown on the display device. To the extent that Lamming discloses GUIs, it only does so in non-consumer electronic entertainment applications that are shown on the very small screen of its mobile computing device. As such, it is not possible for Lamming to teach the claim element because there is no visual feedback provided to a user by a large display screen. For this additional reason, I believe that the new claims are patentable over Lamming.

       e.     Each new claim recites a step of the mobile communications device transmitting at least some of the movie or video for display on the display device simultaneously while at least some of it is being downloaded from the server to the mobile communications device. To the extent that Lamming discloses the downloading of videos as stated in paragraph 3, Lamming only does so in the case where the video is a part of a document being downloaded by a document processing service. The video-containing document has to be fully downloaded and opened *before* the video can be used. For example, Lamming teaches that "*after* retrieving the document," a "driver is loaded if necessary…for the specified output device…to process the format in which the retrieved document exists." Lamming ¶ 71. (emphasis added) Similarly, Lamming teaches that "*[a]fter* retrieving and formatting a document…the token-aware document delivery server 1238 delivers the formatted document to a driver." Lamming at ¶ 104. (emphasis added). That directly teaches away from the claim element at issue which requires that there be

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 13 of 20

at least some overlap in time between when display takes place on the large display and when the movie or video is downloaded. For this additional reason, I believe that the new claims are patentable over Lamming.

10.    Assuming, for the sake of argument, that it is proper to combine Sarma with Lamming, I do not believe that Sarma provides the teachings missing from Lamming to render new claims 41-56 obvious.

a.    First, Sarma does not disclose, teach or suggest the step of each new claim which a display device suitable for use in a media center environment is electrically coupled with a mobile computing device for a number of reasons. For example, while Figure 1 of Sarma shows a display, the specification describes it as being a "display accessory 10" to the mobile device 20. A display that is an accessory to a cell phone is not suitable for a media center environment such as, for example, that which can be found in a person's home. The display devices covered by the claimed invention are non-portable devices that can be fixed, for example in a theatre room in someone's home, which is something that Sarma does not teach. For this reason alone, I believe that the new claims are patentable over a purported combination of Lamming and Sarma.

b.    Second, Sarma does not disclose, teach or suggest the step of each new claim by which a first GUI is shown on the display device that conveys information to a viewer about movies or videos that are individually downloadable from a remote server. Sarma teaches away from this because, for example, Figure 5

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 14 of 20

of Sarma clearly shows that the "content" is downloaded at step 160 *before* the

mobile device 20 "detects" the display accessory.  As such, it is impossible for Sarma

to have a content selection GUI shown on the display accessory to allow the user to

select content for downloading.  For this additional reason, I believe that the new

claims are patentable over a purported combination of Lamming and Sarma.

c.     Third, each new claim requires a step of entering entertainment

selection commands into the mobile communications device to select a movie or

video based on the visual feedback a user receives by reading or interacting with the

first GUI on the display device.  Sarma cannot teach this claim element because, for

example, Sarma is limited to content downloading *before* the display accessory is

even detected.  For this additional reason, I believe that the new claims are

patentable over a purported combination of Lamming and Sarma.

d.     Each new claim recites a step of receiving by the mobile

communications device of the movie or video a viewer selected based on the visual

feedback obtained by reading or interacting with the first GUI shown on the display

device.  Again, it is not possible for Sarma to disclose this claim element because,

for example, the downloading of content is done *before* the display is detected.  For

this additional reason, I believe that the new claims are patentable over a purported

combination of Lamming and Sarma.

e.     It is not possible for Sarma to teach step of each new claim by

which the mobile communications device transmits at least some of a movie or video

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 15 of 20

for display simultaneously while at least some of it is being downloaded from the
server to the mobile communications device. As discussed above, Sarma cannot do
this as its teachings are limited to content downloading *before* the display is
detected. For this additional reason, I believe that the new claims are patentable
over a purported combination of Lamming and Sarma.

11.     Assuming, for the sake of argument, that it is proper to combine Vance
with Lamming and Sarma, I do not believe that Vance provides the teachings
missing from both Lamming and Sarma to render new claims 41-56 obvious.

a.     First, Sarma does not disclose, teach or suggest step (a) of each
new claim for a number of reasons. For example, all of the embodiments disclosed
in Sarma relate to videoconferencing. Videoconferencing is not consumer electronic
entertainment. For this reason, I believe that the new claims are patentable over a
purported combination of Lamming, Sarma and Vance.

b.     Second, Sarma does not disclose, teach or suggest the step of
each new claim by which a first GUI is shown on the display device that conveys
information to a viewer about movies or videos that are individually downloadable
from a remote server. For example, Sarma only discloses video conferencing, not a
consumer electronic entertainment system for downloading movies or videos.
Moreover, it is not possible for the external display screen 160 to be involved in the
content selection process because, for example, Vance teaches that a video
conference is routed to the external display *only after* a video conference is received

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 16 of 20

or initiated (Vance, col. 6, lines 33-37). For this reason alone, I believe that the new claims are patentable over a purported combination of Lamming, Sarma and Vance.

c.     Third, Vance teaches away from the step of each new claim requiring the entry of entertainment selection commands into the mobile communications device to select a movie or video based on the visual feedback a user receives by reading or interacting with the first GUI on the display device. As discussed above, video conferences are sent to the eternal display *only after* the video conference is initiated or received. For this additional reason, I believe that the new claims are patentable over a purported combination of Lamming, Sarma and Vance.

d.     Each new claim recites a step of receiving by the mobile communications device of the movie or video a viewer selected based on the visual feedback obtained by reading or interacting with the first GUI shown on the display device. Again, it is not possible for Vance to disclose this claim element because, for example, video conferences are sent to the eternal display *only after* the video conference is initiated or received. For this additional reason, I believe that the new claims are patentable over a purported combination of Lamming, Sarma and Vance.

e.     Vance does not teach step of each new claim by which the mobile communications device transmits at least some of a movie or video for display simultaneously while at least some of it is being downloaded from the server to the mobile communications device. In Vance, nothing is downloaded. Instead, video

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 17 of 20

conferences are routed between phones or other video conferencing devices. For this additional reason, I believe that the new claims are patentable over a purported combination of Lamming, Sarma and Vance.

12.   I hereby declare that all statements made herein of my knowledge are true and that all statements made upon information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issued thereon.

_Michael D. Harold_          _Sept. 7, 2016_
Michael D. Harold                     Date

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 18 of 20

## Exhibit A

41.    (New)  A method for downloading and viewing a movie or video on a display device, the method comprising the steps of:

(a)    electrically coupling for consumer electronic entertainment purposes a display device suitable for use in a media center environment with a mobile communications device that does not form a part of the media center environment;

(b)    causing a first graphic user interface to be displayed on the display device that conveys information to a viewer of the display device about movies or videos that are individually downloadable from a server for display on the display device for electronic entertainment purposes;

(c)    entering entertainment selection commands into the mobile communications device to select a particular one of the movies or videos for downloading from the server based on visual feedback the viewer receives by reading or interacting with the first graphic user interface shown on the display device;

(d)    receiving by the mobile communications device of the particular movie or video that is sent to it from the server based on the viewer's reading or interaction with the first graphic user interface shown on the display device;

(e)    transmitting by the mobile communications device of at least some of the particular movie or video to the display device for display thereon simultaneously while at least some of the particular movie or video is being downloaded from the server to the mobile communications device; and

(f)    wherein the electrical coupling between the mobile communications device and the display device allows the particular movie or video to be sent therebetween when the mobile communications device is located a distance away from the display device at which a person watches a movie at home.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 19 of 20

42.    (New)  The method of claim 41, wherein the media center environment forms a home media center environment.

43.    (New)  The method of claim 41, wherein the display device is electrically coupled to the mobile communications device by means of at least one wireless connection.

44.    (New)  The method of claim 41, wherein the display device is electrically coupled to the mobile communications device by means of at least one wireline connection.

45.    (New)  The method of claim 41, wherein the mobile communications device is adapted to communicate with the server via the internet.

46.    (New)  The method of claim 41, wherein the download commands are generated on the mobile communications device by means of a keyboard.

47.    (New)  The method of claim 41, wherein the display device comprises a high definition display device.

48.    (New)  The method of claim 41, wherein the display device comprises a television set.

49.    (New)  The method of claim 41, further comprising the steps of

displaying a control graphic user interface on the display device while the particular movie or video is being shown on the display device:

entering display control commands into the mobile communications device and then sending those display control commands to the server to cause control actions to be performed on the particular movie or video being sent from the server through the mobile communications device and to the display device; and

sending a modified version of the particular movie or video being downloaded which embodies the display control commands.

50.    (New)  The method of claim 49, wherein the control graphic user interface is shown on the display device at the same time as the stream is shown on the display device.

Ser. No. 14/531,641
Declaration Of Michael D. Harold Under 37 CFR 1.132
Page 20 of 20

51.    (New)  The method of claim 49, wherein the control graphic user interface is shown on the display device only at the command of the user.

52.    (New)  The method of claim 41, further comprising the step of electrically coupling at least one additional device other than the display device to the mobile communications device.

53.    (New)  The method of claim 41, wherein the mobile communications device comprises a cellular telephone.

54.    (New)  The method of claim 41, wherein the first graphic user interface only provides visual information about movies or videos that are available for download from the server.

55.    (New)  The method of claim 41, wherein the transmitting of the particular movie or video from the mobile communications device to the display device for display thereon occurs substantially simultaneously with the downloading of the particular movie or video from the server to the mobile communications device.

56.    (New)  The method of claim 41, wherein the causing step includes downloading the first GUI from the server to the mobile communications device.